IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Joe Robertson, ) | C/A No. 0:09-2259-RBH-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

  This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Joe Robertson ("Robertson"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying his claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

  In June 2005, Robertson applied for SSI and DIB. Robertson's applications were denied initially and on reconsideration and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on April 17, 2008 at which Robertson appeared and testified and was represented by Mitchell S. Swindell, Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision dated September 17, 2008 finding that Robertson was not disabled. (Tr. 16-26.)

  Robertson was born in 1951 and was 57 years old at the time of the ALJ's decision. (Tr. 59.) He completed one year of college and has past relevant work experience as a machine operator, salesperson, hotel counter clerk, and baggage loader and caterer for an airline. (Tr. 97.) Robertson

alleges disability since May 26, 2005 due to Drusen in his left eye, ganglin cyst, knee problems, degenerative arthritis, and back spasms. (Tr. 96, 424-25.)

The ALJ made the following findings and conclusions:

1. The claimant met the insured status requirements of the Social Security Act through September 30, 2006.

2. The claimant has not engaged in substantial gainful activity since May 26, 2005, the amended alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative arthritis of the right knee and chronic myofascial back pain related, in part, to degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work in regards to which he can occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; sit six to eight hours in an eight-hour workday; walk six to eight hours in an eight-hour workday; stand six to eight hours in an eight-hour workday; pushing/pulling with the extremities frequently; stoop and balance frequently; and occasionally climb, kneel, crouch, and crawl. He is unable to climb ladders, scaffolds, or ropes, can reach and handle without limitation, and has no environmental restrictions other than needing to avoid concentrated exposure to fumes.

\* \* \*

6. The vocational expert classified the claimant's past relevant work as that of a machine operator in the plastics industry (light/semi-skilled); sales person (light/semi-skilled); stocker (heavy/unskilled); and machine operator in the electronics industry (light/semi-skilled). The vocational expert testified that assuming the claimant's age, education, past work experience, and residual functional capacity he would be capable of performing his past relevant work as a sales person and machine operator in the electronics industry. These jobs do not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

\* \* \*

      7.      Thus, I find that the claimant has not been under a disability, as defined in the Social Security Act, from May 26, 2005, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 18-25.)

Robertson filed a request for Appeals Council review which was denied on August 14, 2009, making the decision of the ALJ the final action of the Commissioner. (Tr. 5-8.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

    (1)    whether the claimant is engaged in substantial gainful activity;

    (2)    whether the claimant has a "severe" impairment;

    (3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

    (4)    whether the claimant can perform his past relevant work; and

    (5)    whether the claimant's impairments prevent his from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.



Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id.



Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

## ISSUES

Robertson raises the following issues for this judicial review:

I.  Did the ALJ fail to properly assess the treating physicians' opinions as required by 20 CFR § 404.1527(d)(1)-(6), SSR 96-2p and SSR 96-5p?

II. Did the ALJ adequately explain his findings regarding Robertson's residual functional capacity, as required by Social Security Ruling 96-8p?

(Pl.'s Br., ECF No. 12.)

## DISCUSSION

**A.     Treating Physicians**

Robertson first argues that the ALJ erred in rejecting the opinions of two of his treating physicians:  Merrill J. Gildersleeve, M.D., and John R. Rowell, Jr., M.D.  Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  "If [the Commissioner] finds that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [the Commissioner] will give it controlling weight."  Id.; cf. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*) ("Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not *require* that the testimony be given controlling weight.") (emphasis added).  If controlling weight is not accorded, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list:  (1) whether the physician has

examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).  In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

      1.      Dr. Gildersleeve

In a medical source statement completed in November 2007, Dr. Gildersleeve, Robertson's primary treating physician, opined that Robertson suffered from chronic back pain that was aggravated by bending, lifting, pulling, or prolonged standing. (Tr. 399.) He further stated that Robertson could stand for two hours in an eight-hour workday for ten minutes at a time and that, due to back fatigue and pain, Robertson needed freedom to "be up and down." (Tr. 399-400.) Dr. Gildersleeve further opined that Robertson should never climb, balance, stoop, or crawl, as these activities had exacerbated his pain in the past. (Tr. 400.) Additionally, he stated that Robertson would have limitations in reaching, handling, and pushing/pulling and that he should avoid heights, moving machinery, temperature extremes, and vibrations. (Tr. 400-01.)

The ALJ found Dr. Gildersleeve's opinion to be inconsistent with the clinical and diagnostic findings, as well as Dr. Gildersleeve's October 2005 advice to Robertson to return to walking up to two miles twice a day. (Tr. 25, 296.) Specifically, the ALJ found that there was no clinical evidence of any significant, sustained deterioration in Robertson's condition from Dr. Gildersleeve's October 2005 advice to his later assessment in November 2007. The ALJ noted that in May 2005—the month Robertson alleged he became disabled—Robertson reported to Dr. Rowell that his low back was "doing fine." (Tr. 166.) During his October 2005 visit with Dr. Gildersleeve, Robertson

reported that Lortab was still working fairly well for his pain. In April 2006, Robertson was seen for back pain by Dr. Scott C. Weikle at which time he reported that his back pain continued to be episodic and did not radiate. Dr. Weikle noted that Robertson's gait and station were normal and that he had normal range of motion of the right lower extremity without pain, instability, subluxation, or laxity. (Tr. 262-65.) During his follow-up appointment in June 2006, Robertson did not complain of back pain and was advised that he should walk one mile per day. (Tr. 256.) Robertson's urologist noted that Robertson was recovering from an episode of prostatitus during this time, and that some of the back pain he was experiencing was related to episodic prostatitus. (Tr. 266-67.) The ALJ did note that in August 2006 Dr. Gildersleeve reported that Robertson was anticipating right total knee anthroplasy and was using a cane. In December 2006, Dr. Gildersleeve reported that Robertson had developed sciatica in the left leg and prescribed Lyrica. In his follow-up appointment, Robertson reported that his pain was moderately controlled and his sciatica had improved. The ALJ also noted that in March 2008, Dr. Gildersleeve reported that Robertson had numbness in his feet at times and continued to experience back pain with little radiation, but also reported that Robertson's June 15, 2007 MRI did not show any major abnormalities. (Tr. 397.)

The ALJ is not required to give a treating physician's opinion controlling weight and may accord it less weight for a variety of reasons. Hunter, 993 F.2d at 35; Johnson, 434 F.3d at 654. In this case, the ALJ discussed in detail the medical evidence and testimony presented and provided explicit reasons for not accepting Dr. Gildersleeve's opinion, instead giving considerable weight to the opinion of the state agency physicians. Robertson argues that the ALJ's conclusion not to accord significant weight to Dr. Gildersleeve's opinion is not supported by the evidence and attacks some of the reasons offered by the ALJ. For example, Robertson argues that the following evidence supports Dr. Gildersleeve's opinion: an MRI performed on January 29, 2004, indicating that

Robertson's lumbar discs showed narrowing and degeneration and the presence of spur formation from L2 to L5; a November 29, 2004 x-ray showing "significant degenerative changes in the right knee;" a letter from Dr. Rowell indicating that December 26, 2007 x-rays showed tricompartmental arthritis with marked arthritic change in the right knee; anticipation of the need for knee surgery in the future. (Pl.'s Br., ECF No. 12 at 15-16) (citing Tr. 164, 172, 285, 402). Robertson also asserts that this evidence demonstrates that Robertson's condition has worsened since 2005, and that the ALJ erred in relying on a 2005 recommendation to return to walking two miles twice a day as a basis to reject Dr. Gildersleeve's opinion. However, while Robertson may be able to point to some evidence to support Dr. Gildersleeve's opinion—assuming that this evidence does in fact support his opinion—the court finds that based on the evidence discussed above, Robertson has failed to show that the ALJ's decision was not supported by substantial evidence. Further, contrary to Robertson's argument, the court finds that the ALJ's statement that Robertson's "impairments have been *progressing gradually* over a long period of time" is not inconsistent with the statement that "[t]here is no clinical evidence of any *significant*, sustained deterioration in his condition since [2005]." (Compare Tr. 25 with Tr. 24) (emphasis added).

Additionally, based on the record, the court cannot say that the ALJ erred in giving more weight to the opinions of the state agency physicians, while rejecting Dr. Gildersleeve's opinion. Although the state agency physicians' opinions were completed in 2005 without the benefit of later medical records, the ALJ found these opinions consistent with the record. See 20 C.F.R. § 404.1527. (providing that the ALJ must explain the weight he gives to the opinions of agency doctors, which are evaluated using the same factors used for other medical sources); SSR 96-6p (stating that "[s]tate agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act").

Accordingly, based on a review of the record, the parties' arguments, and the ALJ's decision, the court finds that Robertson has failed to show that the ALJ's decision to reject the opinion of Dr. Gildersleeve was not supported by substantial evidence or was controlled by an error of law. See 20 C.F.R. § 404.1527(d)(2) (permitting an ALJ to consider whether the medical opinion is "inconsistent with the other substantial evidence in your case record"); Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); see also Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (finding that an ALJ may weigh other factors brought to his or her attention that tend to support or contradict a treating physician's opinion) (quoting Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003)); Stanley v. Barnhart, 116 Fed. Appx. 427, 429 (4th Cir. 2004) (unpublished) (disagreeing with the argument that the ALJ improperly gave more weight to residual functioning capacity assessments of non-examining state agency physicians over those of examining physicians and finding that the ALJ properly considered evidence provided by those physicians in context of other medical and vocational evidence).

### 2.     Dr. Rowell

The ALJ noted that Robertson had been treated by an orthopedist, John R. Rowell, Jr., M.D. since April 4, 2001, when he sprained his right knee while doing some heavy work. (Tr. 22.) According to the medical records, Dr. Rowell treated Robertson's knee pain with Supartz injections prior to the alleged onset date. (Tr. 168-70.) In May 2005, Robertson reported to Dr. Rowell that his knee continued to bother him, and Dr. Rowell advised outpatient arthroscopic surgery. (Tr. 166.) The ALJ noted that no further medical records of treatment are contained within the record. (Tr. 24.) Dr. Rowell submitted a letter in April 2008 which stated that Robertson had been under his care for many years for degenerative arthritis of the right knee and that Robertson's latest x-ray on December

26, 2007 had shown tricompartmental arthritis with marked arthritic changes. Dr. Rowell further stated that total knee arthroscopy was discussed with Robertson at that time and would be needed in the future. (Tr. 402.) Dr. Rowell also stated in his letter that Robertson's ability to stand and ambulate was markedly restricted, and that he would require treatment with anti-inflammatory medications, as well as pain medications.

The ALJ considered Dr. Rowell's April 2008 opinion that Robertson was markedly restricted in his ability to stand and ambulate, but found that this opinion was not adequately supported by clinical and laboratory diagnostic techniques. (Tr. 25.) Specifically, the lack of treatment records from Dr. Rowell after May 2005 as well as the absence of any clinical evidence of any significant, sustained deterioration in Robertson's functioning since that time caused the ALJ to give more weight to the opinion of the state agency medical consultants, as he found their opinions to be more reliable and consistent with the record as a whole. (Tr. 25); SSR 96-2p, 96-6p. Additionally, the ALJ found Dr. Rowell's opinion to be inconsistent with Dr. Gildersleeve's October 2005 advice to Robertson to return to walking.

As stated above, the ALJ is not required to give a treating physician's opinion controlling weight and may accord it less weight for a variety of reasons. Hunter, 993 F.2d at 35; Johnson, 434 F.3d at 654. In this case, the ALJ discussed in detail the medical evidence and testimony presented and provided explicit reasons for not accepting Dr. Rowell's opinion. First, to the extent that Robertson is reasserting his arguments discussed above, specifically, that medical records demonstrate that Robertson's condition was worsening and that the ALJ erred in relying on Dr. Gildersleeve's recommendation that Robertson should increase his walking to two miles twice a day, for the reasons discussed above that court finds that these arguments do not render the ALJ's opinion unsupported by substantial evidence.

Robertson also argues, relying on <u>Dominguese v. Massanari</u>, 172 F. Supp. 2d 1087, 1100-01 (E.D. Wis. 2001), and <u>Maddox v. Astrue</u>, C/A No. 8:07-3696-HFF-BHH (D.S.C. Dec. 30, 2008) (Hendricks, M.J., Report and Recommendation), that the ALJ erred in rejecting Dr. Rowell's opinion by applying an erroneous standard of review.  Specifically, Robertson argues that the ALJ erroneously rejected Dr. Rowell's opinion because it was *not supported* by the record when the regulations require his opinion to be given controlling if it is *not inconsistent* with the record. (Pl.'s Br., ECF No. 12 at 21.)  However, contrary to Robertson's assertion, the ALJ rejected Dr. Rowell's opinion because he found that the opinion was "not adequately supported by clinical and laboratory diagnostic techniques" and was inconsistent with the other evidence of the record, which are appropriate factors for consideration.  <u>See</u> 20 C.F.R. § 404.1527(d)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."); <u>Johnson</u>, 434 F.3d at 654 (stating that two of the factors for consideration are "the supportability of the physician's opinion" and "the consistency of the opinion with the record") (citing 20 C.F.R. § 404.1527). Accordingly, the court rejects this argument.

Finally, Robertson argues that the ALJ should have either recontacted Dr. Rowell to seek further information or obtained the testimony of a medical expert at the hearing.  However, the court observes that Robertson was represented by counsel at his hearing before the ALJ.  Further, the ALJ "is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record," and Robertson has failed to demonstrate that this record is incomplete.  <u>Clark v. Shalala</u>, 28 F.3d 828, 830-31 (8th Cir. 1994) (cited in <u>Bell v. Charter</u>, No. 95-1089, 1995 WL 347142, at *4 (4th Cir. 1995) (Table)).  Moreover, Robertson does not contest that Dr. Rowell's

treatment records revealed no functional restrictions until he issued the April 2008 opinion; however, he appears to argue that courts should recognize that many doctors do not describe restrictions in their treatment records and take very sparse notes. (Pl.'s Reply Br. at 5, ECF No. 14 at 5.) On review the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589. Even accepting Robertson's arguments as correct, the court is not persuaded that the ALJ's conclusions are unsupported. Blalock, 483 F.2d at 775 (4th Cir. 1973) (stating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence). Accordingly, upon review of the medical evidence and the ALJ's decision, the court finds substantial evidence to support the ALJ's decision to accord Dr. Rowell's opinion less than full weight. See, e.g., 20 C.F.R. §§ 404.1527(e), 416.927(e) (stating that opinions that a claimant is "disabled" or "unable to work" are reserved to the Commissioner); see Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (finding that the record supported the ALJ's decision to give a treating physician's opinion little weight, in part because it was communicated one year after his last treatment of the plaintiff).

**B.     SSR 96-8p**

Robertson also argues that the ALJ failed to explain his findings in performing Robertson's residual functional capacity ("RFC") assessment pursuant to SSR 96-8p. Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." The RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p.



Specifically, Robertson argues that the ALJ erred in determining that he could perform past relevant work as a sales person and machine operator, and was therefore not disabled. The ALJ determined that Robertson retained the RFC

> to perform light work with no climbing ladders, ropes, or scaffolds and no more than occasional climbing ramps or stairs, kneeling, crouching, or crawling. . . . I find that the claimant is able to perform his past relevant work as it [i]s generally performed and find the testimony of the vocational expert to be consistent with the DOT.

(Tr. 23, 25.)

In compliance with SSR 96-8p, the ALJ provided an extensive narrative discussion, which included a full discussion of the medical and nonmedical evidence. (Tr. 21-25.) The ALJ's discussion explained his resolution of inconsistencies or ambiguities in the evidence in the case record, such as his evaluation of Robertson's subjective complaints as well as the opinion of his treating physicians. (Id.) As discussed above, the ALJ determined that Dr. Gildersleeve's opinion that Robertson was limited to less than sedentary work was inconsistent with other substantial evidence in the record. Additionally, the ALJ found Robertson's subjective allegations not fully credible. Further, the ALJ specifically observed that Robertson's pain "has been reasonably well controlled with Lortab, Lyrica, and other medications . . . and has not caused any functional limitations which would preclude him from performing jobs within the assessed functional capacity." (Tr. 24.) Accordingly, Robertson has failed to demonstrate that the ALJ failed to comply with the requirements of SSR 96-8p.

**RECOMMENDATION**

For the foregoing reasons, the court finds that Robertson has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517.  The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

February 3, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).