IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Joe Robertson, | ) | C/A No.: 0:09-2259-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Michael J. Astrue, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The plaintiff, Joe Robertson, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security denying his claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act.

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 405(g) of that Act provides: "[T]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964); *see*, *e.g*., *Daniel v. Gardner*, 404 F.2d 889 (4th Cir. 1968); *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966); *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *See*, *e.g.*, *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299 (4th Cir. 1968). "[T]he court [must] uphold the [Commissioner's] decision even should the court disagree with such decision

1

as long as it is supported by 'substantial evidence.'" *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). As noted by Judge Sobeloff in *Flack v.Cohen*, 413 F.2d 278 (4th Cir. 1969), "[f]rom this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Id*. at 279. "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

Plaintiff filed his application for disability benefits on June 27, 2005, alleging disability as of May 1, 2001, due to Drusen in his left eye, ganglin cyst, knee problems, degenerative arthritis and back spasms.[1] Plaintiff's claims were denied initially and upon reconsideration. The plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on April 17, 2008. At the hearing, the ALJ granted the claimant's motion to amend the onset date to May 26, 2005. The ALJ thereafter denied plaintiff's claims in a decision issued September 17, 2008. Plaintiff filed an action in this Court for review of the decision. The ALJ's findings became the final decision of the Commissioner of Social Security. Plaintiff has now appealed to the federal court.

The claimant was 54 years old when the application was filed. He completed one year of college. His past work experience includes employment as a machine operator, salesperson, hotel counter clerk, and baggage loader and caterer for an airline.

Under the Social Security Act, the plaintiff's eligibility for benefits hinges on whether he "is under a disability." 42 U.S.C. § 423(a)(1)(D). The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

---

[1] Plaintiff now relies only on knee problems, degenerative arthritis, and back spasms.

2

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . " *Id*. at § 423(d)(1)(A). The burden is on the claimant to establish such disability. *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985). A claimant may establish a *prima facie* case of disability based solely upon medical evidence by demonstrating that her impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P. 20 C.F.R. § 404.1520(d).

If such a showing is not possible, a claimant may also establish a *prima facie* case of disability by proving that he could not perform his customary occupation as the result of physical or mental impairments. *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975). Because this approach is premised on the claimant's inability to resolve the question solely on medical considerations, it then becomes necessary to consider the medical evidence in conjunction with certain "vocational factors." 20 C.F.R. § 404.1560(b). These factors include the individual's (1) "residual functional capacity," *id*. at § 404.1561; (2) age, *id*. at § 404.1563; (3) education, *id*. at § 404.1564; (4) work experience, *id*. at § 404.1565; and (5) the existence of work "in significant numbers in the national economy" that the individual can perform, *id*. at § 404.1561. If the assessment of the claimant's residual functional capacity leads to the conclusion that he can no longer perform his previous work, it must be determined whether the claimant can do some other type of work, taking into account remaining vocational factors. *Id*. at § 404.1561. The interrelation between these vocational factors is governed by Appendix 2 of Subpart P. Thus, according to the sequence of evaluation suggested by 20 C.F.R. § 404.1520, it must be determined: (1) whether the claimant is currently gainfully employed, (2) whether he suffers from some physical or mental impairment, (3) whether that impairment meets or equals the criteria of Appendix 1, (4) whether, if those criteria are not met, the impairment prevents him from returning to

his previous work, and (5) whether the impairment prevents his from performing some other available work.

The ALJ made the following findings in this case:

1. The claimant met the insured status requirements of the Social Security Act through September 30, 2006.
2. The claimant has not engaged in substantial gainful activity since May 26, 2005, the amended alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
3. The claimant has the following severe impairments: degenerative arthritis of the right knee and chronic myofascial back pain related, in part, to degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).
* * *
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
* * *
5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work in regards to which he can occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; sit six to eight hours in an eight-hour workday; walk six to eight hours in an eight hour workday; stand six to eight hours in an eight-hour workday; pushing/pulling with the extremities frequently; stoop and balance frequently; and occasionally climb, kneel, crouch, and crawl. He is unable to climb ladders, scaffolds, or ropes, can reach and handle without limitation, and has no environmental restrictions other than needing to avoid concentrated exposure to fumes.
* * *
6. The vocational expert classified the claimant's past relevant work as that of a machine operator in the plastics industry (light/semi-skilled); sales person (light/semi-skilled); stocker (heavy/unskilled); and machine operator in the electronics industry (light/semi-skilled). The vocational expert testified that assuming the claimant's age, education, past work experience, and residual functional capacity he would be capable of performing his past relevant work as a sales person and machine operator in the electronics industry. These jobs do not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
7. Thus, I find that the claimant has not been under a disability, as defined in the Social Security Act, from May 26, 2005, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).
(Tr. 18-25.)

Pursuant to Local Civil Rule 83.VII.02(A), D.S.C, this action was referred to a United States Magistrate Judge. On February 3, 2011, Magistrate Paige J. Gossett filed a report and recommendation ("R&R") suggesting that the decision of the Commissioner should be affirmed. The plaintiff filed objections to the R&R on February 22, 2011. The defendant filed a reply to Plaintiff's objections on March 2, 2011.

The Magistrate Judge concluded that the record contains substantial evidence to support the conclusion of the Commissioner that the plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period.

> The magistrate judge makes only a recommendation to the Court, to which any party may file written objections . . . . The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a *de novo* determination of those portions of the report or specified findings or recommendation as to which an objections is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case, the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

*Wallace v. Housing Auth. of the City of Columbia*, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

### **PLAINTIFF'S OBJECTIONS**

In his objections to the R&R, Plaintiff alleges that the ALJ erred in giving more weight to the opinions by the state agency physicians than to the plaintiff's treating physicians, Dr. Gildersleeve (primary care physician) and Dr. Rowell (orthopaedist). Plaintiff also objects to the finding by the Magistrate that the ALJ assessment of the plaintiff's residual functional capacity (RFC) was properly explained and supported by the evidence as required by Social Security Ruling 96-8p.

## **ANALYSIS**

Under 20 C.F.R. § 404.1527, the opinion of a treating physician is generally entitled to more weight than the opinion of a non-treating physician. However, it is only given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). Under section 404.1527, if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then consider the weight to be given to the physician's opinion by applying five factors identified in the regulation: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527(d)(2)(i-ii) and (d)(3)-(5). "State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians . . . who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical . . .consultants . . . as opinion evidence, except for the ultimate determination about whether you are disabled." *Id*. at § (f)(2)(i).

The Court finds that the factual findings of the ALJ are supported by substantial evidence. With regard to the plaintiff's back problems, the Report and Recommendation sets forth legitimate reasons for the ALJ's reliance on the state agency doctors rather than Dr. Gildersleeve's November 2007 "Medical Source Statement."[2]

---

[2] The Medical Source Statement is based on back problems and not knee problems. For example, it refers to "chronic back pain which is aggravated by bending, lifting, pulling or prolonged standing."(Tr. 399).

6

> The ALJ found Dr. Gildersleeve's opinion to be inconsistent with the clinical and diagnostic findings, as well as Dr. Gildersleeve's October 2005 advice to Robertson to return to walking up to two miles twice a day. (Tr. 25, 296.) Specifically, the ALJ found that there was no clinical evidence of any significant, sustained deterioration in Robertson's condition from Dr. Gildersleeve's October 2005 advice to his later assessment in November 2007. **The ALJ noted that in May 2005—the month Robertson alleged he became disabled—Robertson reported to Dr. Rowell that his low back was "doing fine."** (Tr. 166.) **During his October 2005 visit with Dr. Gildersleeve, Robertson reported that Lortab was still working fairly well for his pain. In April 2006, Robertson was seen for back pain by Dr. Scott C. Weikle at which time he reported that his back pain continued to be episodic and did not radiate. Dr. Weikle noted that Robertson's gait and station were normal and that he had normal range of motion of the right lower extremity without pain, instability, subluxation, or laxity. (Tr. 262-65.) During his follow-up appointment in June 2006, Robertson did not complain of back pain and was advised that he should walk one mile per day.[3] (Tr. 256.) Robertson's urologist noted that Robertson was recovering from an episode of prostatitus during this time, and that some of the back pain he was experiencing was related to episodic prostatitus. (Tr. 266-67.) The ALJ did note that in August 2006 Dr. Gildersleeve reported that Robertson was anticipating right total knee anthroplasy and was using a cane. In December 2006, Dr. Gildersleeve reported that Robertson had developed sciatica in the left leg and prescribed Lyrica. In his follow-up appointment, Robertson reported that his pain was moderately controlled and his sciatica had improved. The ALJ also noted that in March 2008, Dr. Gildersleeve reported that Robertson had numbness in his feet at times and continued to experience back pain with little radiation, but also reported that Robertson's June 15, 2007 MRI did not show any major abnormalities. (Tr. 397.)**
>
> The ALJ is not required to give a treating physician's opinion controlling weight and may accord it less weight for a variety of reasons. . . In this case, the ALJ discussed in detail the medical evidence and testimony presented and provided explicit reasons for not accepting Dr.Gildersleeve's opinion, instead giving considerable weight to the opinion of the state agency physicians. Robertson argues that the ALJ's conclusion not to accord significant weight to Dr. Gildersleeve's opinion is not supported by the evidence and attacks some of the reasons offered

---

[3] The treatment notes of Dr. Gildersleeve in February of 2006 mention the plaintiff's self-assessment as "lazy" when discussing the fact that he was not walking. (Tr. 292).

7

>by the ALJ. For example, Robertson argues that the following evidence supports Dr. Gildersleeve's opinion: an MRI performed on January 29, 2004, indicating that Robertson's lumbar discs showed narrowing and degeneration and the presence of spur formation from L2 to L5; a November 29, 2004 x-ray showing "significant degenerative changes in the right knee;" a letter from Dr. Rowell indicating that December 26, 2007 x-rays showed tricompartmental arthritis with marked arthritic change in the right knee; anticipation of the need for knee surgery in the future. . . Robertson also asserts that this evidence demonstrates that Robertson's condition has worsened since 2005, and that the ALJ erred in relying on a 2005 recommendation to return to walking two miles twice a day as a basis to reject Dr. Gildersleeve's opinion. However, while Robertson may be able to point to some evidence to support Dr. Gildersleeve's opinion—assuming that this evidence does in fact support his opinion—the court finds that based on the evidence discussed above, Robertson has failed to show that the ALJ's decision was not supported by substantial evidence. Further, contrary to Robertson's argument, the court finds that the ALJ's statement that Robertson's "impairments have been *progressing gradually* over a long period of time" is not inconsistent with the statement that "[t]here is no clinical evidence of any *significant*, sustained deterioration in his condition since [2005]." (Compare Tr. 25 with Tr. 24) (emphasis added).
>Additionally, based on the record, the court cannot say that the ALJ erred in giving more weight to the opinions of the state agency physicians, while rejecting Dr. Gildersleeve's opinion. Although the state agency physicians' opinions were completed in 2005 without the benefit of later medical records, the ALJ found these opinions consistent with the record. See 20 C.F.R. § 404.1527. (providing that the ALJ must explain the weight he gives to the opinions of agency doctors, which are evaluated using the same factors used for other medical sources).

(Report and Recommendation, pp. 6-7, emphasis added.)

The substantial evidence of record supports the finding by the ALJ regarding Dr. Gildersleeve's opinion and the plaintiff's back problems.

Regarding the plaintiff's knee problems and the letter and reports of Dr. Rowell (Plaintiff's orthopaedist), contrary to the plaintiff's argument, it is unclear from the 2008 letter[4] that there has been

---

[4] The April 15, 2008 letter was submitted at the hearing before the ALJ. It states in its entirety: "This letter is written to certify that Mr. Joe T. Robertson has been under my care for many years for complaints and problems with degenerative arthritis of his right knee. His latest x-rays on December 26, 2007, show tricompartmental arthritis with marked

a change in the claimant's condition since the state agency evaluations in 2005. The plaintiff has a long history of knee problems. Dr. Rowell's May 2005 notes state: "He wishes to consider outpatient arthroscopy. His old x-rays are reviewed and he has some degenerative changes but a fairly good joint space. He is given a refill for Lortab 5 and we will see him back prior to his arthroscopy which he wishes to schedule sometime later this summer." (Tr. 166)  The state agency doctors discuss and were obviously aware of the plaintiff's knee problems. One state agency doctor states: "Hx of chronic knee pain with G 11-1V chondromalacia noted on priv arthroscopy R. Knee 2000. Plain films R Knee- djd with preserved jt spaces. Repeat arthroscopy is being considered.  Prev rom R. Knee-105deg and L knee 125 deg." (Tr. 238). The other state agency physician also refers to knee pain and an orthopaedic evaluation as follows, "3-16-04: Knee pain when climbing stairs. Had arthroscopy in 2000-Right knee-chondromalacia of the patella, Grade IV intercondylar notch and Grade III with some chondroplasty. . . 1973: Arthrotomy of the right knee for loose bodies PE: Flexion: R/L 105/125- Patellofemoral crepitation in each knee Compression on the right reproduces the pain. DX: OA knees with patellofemoral arthritis." (Tr. 246).

     Plaintiff contends that the ALJ improperly relied on the absence of medical records from Dr. Rowell between 2005 and 2008[5] and asserts that the ALJ had a duty to request records from Dr. Rowell.

---

arthritic change. At that time TKA was discussed with him and he will require this in the future. In the meantime his ability to stand and ambulate is markedly restricted and he requires treatment with antiinflammatory medication as well as pain medication. (Tr. 402).

[5] The ALJ considered Dr. Rowell's opinion in 2008 that the claimant was markedly restricted in his ability to stand and walk at that time. He states: "Because Dr. Rowell is a treating source, his opinion is entitled to controlling weight, if well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record. I find that Dr. Rowell's opinion is not adequately supported by clinical and laboratory diagnostic techniques. I note that there are, in fact, no treatment records from Dr. Rowell after May 2005. I, further, find Dr. Rowell's opinion to be inconsistent with Dr. Gildersleeve's advice to the claimant in October 2005 to return to walking up to two miles twice a day. There is no clinical evidence of any significant, sustained deterioration in his functioning since that time. I have given more weight to the opinion of the state agency medical consultants, who are experts in the evaluation of medical issues in

9

The appropriate standard is whether evidence submitted by claimant is "inadequate" to determine whether claimant is disabled.  20 C.F.R. § 416.912(e). ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.") Only a "reasonably complete" record is required. *Bell v. Chater*, 57 F.3d 1065 (4th Cir. 1995).  The claimant in this case was represented by counsel, and the plaintiff does not allege that specific medical records exist which would assist the ALJ in examining the case.  Therefore, on the basis of the above analysis, the Court holds that the findings by the ALJ were supported by substantial evidence.

Finally, the plaintiff argues that the ALJ failed to properly explain his findings regarding his RFC.  The Court agrees with the Magistrate that the ALJ complied with SSR 96-8p in making the RFC assessment.

## **CONCLUSION**

The findings of the ALJ are supported by the substantial evidence and were not controlled by legal error. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the (Commissioner) or the (Commissioner's designate, the ALJ." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). On the record before it, this court must overrule all objections and agree with the Magistrate Judge's recommended disposition of this case. After carefully reviewing the record in this matter, the applicable law, and the positions of the parties, the court is constrained to adopt the recommendation of the Magistrate Judge and accept the determination of the Commissioner that the plaintiff is not disabled.

---

disability claims under the Social Security Act.  I find the opinions of the state agency medical consultants to be more reliable and consistent with the record as a whole.  (SSR 96-2p, 96-6p). (Tr. 25).

For the foregoing reasons, all objections are overruled; the report and recommendation of the magistrate judge is incorporated herein by reference; and the decision of the Commissioner denying benefits is hereby affirmed.

**IT IS SO ORDERED**.

                                                       s/R. Bryan Harwell
                                                      R. Bryan Harwell
                                                      United States District Judge

March 23, 2011
Florence, South Carolina